**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Kevin Newbanks,

        Plaintiff,

     v.                                Case No. 1:15cv300

PortNexus Corporation                Judge Michael R. Barrett

        Defendants.

**OPINION & ORDER**

This matter is before the Court upon Defendant PortNexus Corporation's Motion to Dismiss the Complaint.  (Doc. 16).  Plaintiff Kevin Newbanks has filed a Response in Opposition (Doc. 26) and Defendant PortNexus filed a Reply (Doc. 29).

Also before the Court is Plaintiff Kevin Newbanks' Motion for Award of Costs for Service of Process and Attorney's Fees.  (Doc. 9).  Defendant PortNexus filed a Response in Opposition (Doc. 18) and Plaintiff Kevin Newbanks filed a Reply (Doc. 26).

I.    **BACKGROUND**

Defendant PortNexus Corporation is a Delaware corporation with its principal place of business in Dania Beach, Florida.  (Doc. 16-1, Steve Jones Decl., ¶ 2). PortNexus develops and services smartphone applications.  (Id., ¶ 3).  One of these applications is PLEDGE.  (Id.)  PLEDGE is designed to monitor, capture and alert business and families that one of their employees or family members has unlocked the application and is texting or using their cellphone while driving.  (Doc. 1, ¶ 5).  The subscribers of PLEDGE would pay a monthly fee for use of the application.  (Id., ¶ 9).

PortNexus co-developed PLEDGE with Plaintiff Kevin Newbanks.  (Kevin Newbanks Decl., ¶ 2).   Newbanks is a resident of Ohio.   (Doc. 1, ¶ 1).

During the time Newbanks and PortNexus were working to develop PLEDGE, Newbanks was employed by AT&T.  (Id.)   Steve Jones, CEO of PortNexus, discussed the possibility of Newbanks working for PortNexus multiple times, but Newbanks declined the opportunity.  (Id.)

In late 2011, Newbanks informed Jones that AT&T had eliminated his position.  (Id.)   Jones offered Newbanks the position of Product Manager.  (Id.)   In this position, Newbanks was responsible for marketing PLEDGE to mobile service and technology providers.  (Jones Decl., ¶¶ 3, 8).   In February of 2012, Newbanks and PortNexus entered into an employment agreement ("Agreement").  (Doc. 1-1).   PortNexus sent the Agreement to Newbanks in Ohio, and Newbanks signed the Agreement in Ohio.  (Newbanks Decl., ¶ 3).

The Agreement states that Newbanks will be based out of the Florida office of PortNexus, "with permission to work from your home when needed."  (Doc. 1-1, ¶ 3).   The Agreement also states that Newbanks would be rewarded for his development of PLEDGE with 150,000 shares of PortNexus' common stock.  (Id., ¶ 15).   Under the Agreement, Newbanks was to receive ten percent commissions monthly on all revenue PortNexus received from active users of PLEDGE.   (Id.)

Newbanks alleges that PortNexus sent false and misleading commission statements to Newbanks so that it could pay less than the commissions actually owed to him.   Newbanks also alleges that he never received any shares of common stock.   In its Amended Complaint, Newbanks brings claims of breach of contract, promissory estoppel

2

and fraud.   (Doc. 6).

PortNexus argues that Plaintiff's Amended Complaint should be dismissed for lack of personal jurisdiction.   In the alternative, PortNexus argues that this Court should transfer the case to the Southern District of Florida.

## II.   ANALYSIS

### A.   Motion to Dismiss Standard

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of a claim for lack of jurisdiction over the person.   The plaintiff bears the burden of establishing that such jurisdiction exists.   *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).

When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, the plaintiff "'need only make a prima facie showing of jurisdiction.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)) (internal citation omitted).   The plaintiff can make this *prima facie* showing by "'establishing with reasonable particularity sufficient contacts between [the Defendant] and the forum state to support jurisdiction.'" *Neogen Corp.*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. California Savings Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)).   The court must consider the pleadings and affidavits in a light most favorable to the plaintiff.   *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

### B.   Personal jurisdiction

The Sixth Circuit has established a two-step inquiry to determine whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction

over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause.  *CompuServe*, 89 F.3d at 1262.

The Sixth Circuit has explained that there are two kinds of personal jurisdiction: general and specific jurisdiction.  *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) ("Jurisdiction may be found to exist either generally, in cases in which a defendant's "continuous and systematic" conduct within the forum state renders that defendant amenable to suit in any lawsuit brought against it in the forum state . . . or specifically, in cases in which the subject matter of the lawsuit arises out of or is related to the defendant's contacts with the forum.").  However, the Sixth Circuit has stated that "under Ohio law, a court may exercise personal jurisdiction over a non-resident defendant only if specific jurisdiction can be found under one of the enumerated bases in Ohio's long-arm statute."  *Conn v. Zakharov,* 667 F.3d 705, 717 (6th Cir. 2012).

### 1.  Ohio's long-arm statute

Ohio's long-arm statute provides in relevant part that:

A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

 . . .

(6) Causing tortious injury in this state to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state;

Ohio Rev. Code § 2307.382(A).  The Ohio Supreme Court has explained that the "transacting any business" basis for extending jurisdiction set forth in Ohio Revised Code

§ 2307.382(A)(1), "is very broadly worded and permit[s] jurisdiction over nonresident defendants who are transacting any business in Ohio." *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 481 (Ohio 1990); *see also Brunner v. Hampson*, 441 F.3d 457, 464 (6th Cir. 2006) ("[t]he term 'transacting any business' as used in . . . the statute . . . will be given broad interpretation.") (quoting *Ricker v. Fraza/Forklifts of Detroit*, 828 N.E.2d 205, 209 (Ohio Ct. App. 2005)).

Where a non-resident defendant initiates business negotiations, negotiating and executing a contract with an Ohio resident with ongoing responsibilities, such defendant is "transacting business" in Ohio pursuant to the Ohio long-arm statute. *The Andersons, Inc. v. Demrex Indus. Servs., Grp., LLC*, 590 F. Supp. 2d 963, 967 (N.D. Ohio 2008); *see e.g., Ricker v. Bobcat of Orlando, Inc.*, No. 04AP–481, 2004 WL 2591244 at * 3 (Ohio Ct. App. Nov. 16, 2004) (non-resident defendant "transacting business" where the non-resident initiated business dealings in Ohio, communications took place between Ohio resident and the non-resident sent payments to Ohio resident's office); *Farr v. Spatial Tech. Inc.*, 152 F.R.D. 113, 117 (S.D. Ohio 1993) (non-resident defendant was "transacting any business" in Ohio under Ohio Rev. Code § 2307.382(B) by having Ohio resident act as defendant's Ohio sales representative in order to solicit computer software orders in Ohio).

In his Declaration, filed under seal, Newbanks explains that during the time he was developing PLEDGE with PortNexus, there were numerous telephone conferences and email correspondence between PortNexus and himself. (Doc. 27 SEALED, Kevin Newbanks Decl., ¶ 2). Newbanks explains that during this time, he was living in

5

Cincinnati, Ohio. (Id.) Newbanks explains that while they were developing PLEDGE, Jones repeatedly told him he should work for PortNexus. (Id.) Newbanks explains that when his employment with AT&T ended, Jones requested his resume. (Id., ¶ 3). Newbanks states that after discussing a potential agreement, Jones memorialized those terms in writing in the Agreement. (Id.) Newbanks explains that Jones sent the Agreement to him in Ohio, and he signed the Agreement in Ohio. (Id.) Newbanks explains that there was an agreement that he would work out of Ohio, and he never travelled to Florida during his employment with PortNexus. (Id. ¶¶ 3, 6). Newbanks states that his commission checks and compensation documents were sent to him at home in Ohio. (Id., ¶ 19).

Newbanks also explains that while working for PortNexus, his sales territory specifically included Ohio. (Id., ¶ 4). Newbanks explains that he trained and supported AT&T employees selling PLEDGE in Cincinnati, Dayton, Columbus and Cleveland, Ohio. (Id., ¶ 7). Newbanks also explains that he sold PLEDGE licenses to nine businesses located in Ohio and gave presentations to seventeen other businesses located in Ohio. (Id., ¶ 13).

Based on the statements in Newbank's Declaration, PortNexus was "transacting business" in Ohio. PortNexus was directing communications to Newbanks—an Ohio resident—for the purpose of negotiating an agreement. In addition, through Newbanks' sales, training and service of PLEDGE in Ohio, PortNexus had a continuing obligation that connected PortNexus to Ohio.

Therefore, this Court has jurisdiction under Ohio's long arm statute.

6

## 2. **Due process**

To comport with due process, an exercise of personal jurisdiction requires that a defendant "have certain minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).   The Sixth Circuit has set forth a three-prong analysis to determine whether jurisdiction accords with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.   Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000) (quoting *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

"The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state 'proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State,' and when the defendant's conduct and connection with the forum are such that he 'should reasonably anticipate being haled into court there.'   *CompuServe*, 89 F.3d at 1263 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)).   The act of contracting alone is not adequate to "automatically establish sufficient minimum contacts in the other party's home forum," but instead, a court should look to other factors such as "prior negotiations," "contemplated future consequences," "the terms of the contract," and "the parties' actual course of dealing" to determine whether the contract constitutes sufficient minimum contact with the forum.   *Burger King*, 471 U.S. at 478-79.

7

PortNexus contracted with Newbanks, an Ohio resident, to sell PLEDGE. Newbanks' sales territory included Ohio.  In his Declaration, Newbanks explains that PortNexus sent other sales representatives to Ohio to service existing accounts and promote sales of PLEDGE and other PortNexus products.   (Newbanks Decl., ¶ 7).

Newbanks explains that PortNexus sent him emails while he was in Ohio and he had status conference calls with PortNexus on a weekly, and sometimes daily, basis. (Id., ¶ 8).   Newbanks also explains that he trained and provided service for approximately 100 AT&T managers and sales representatives who were located in Ohio. (Id., ¶ 9).

These contacts show a PortNexus had a substantial connection with Ohio and should have reasonably anticipated being haled into Court there.   Therefore, the purposeful availment requirement is satisfied.   *Accord Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio.").

Next, the Court finds that Newbanks' causes of action arise from the PortNexus' activities in Ohio.   Newbanks brings claims of breach of contract, promissory estoppel and fraud.   Newbanks' breach of contract claim is that PortNexus breached the Agreement.   PortNexus entered into the Agreement with an Ohio resident who was selling their product in Ohio for a commission.   Similarly, in support of his promissory estoppel claim, Newbanks alleges that PortNexus made promises upon which he relied upon to his detriment.   These promises were made to Newbanks while he was a resident

of Ohio.   In support of his fraud claim, Newbanks alleges that PortNexus made representations or concealments of material facts as to the amounts of commissions owed to him and when it promised him that he would receive 150,000 shares of company common stock.   These representations were sent or made to Newbanks while he was a resident of Ohio.   Therefore, the second prong is satisfied.

Once the first two *Southern Machine* prongs are met, "an inference of reasonableness arises . . . and [ ] 'only the unusual case will not meet this third criterion.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1461 (6th Cir. 1991) (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988)).   Factors to consider in determining if jurisdiction is reasonable are: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the controversy."   *Intera Corp v. Henderson*, 428 F.3d 605, 618 (6th Cir. 2005).

PortNexus argues that litigating in Ohio creates a burden on PortNexus because most of the relevant evidence and witnesses are in Florida.   This burden, however, is outweighed by other concerns.   When an Ohio resident's rights are jeopardized, Ohio has an interest "in protecting its residents' legal options."   *Youn*, 324 F.3d at 419. Moreover, Newbanks clearly has an interest in obtaining relief.   Therefore, the Court concludes that exercise of jurisdiction over PortNexus is reasonable.

Accordingly, this Court has personal jurisdiction over PortNexus, and PortNexus' Motion to Dismiss for lack of personal jurisdiction is DENIED.

### C.   Motion to Transfer Venue

PortNexus argues in the alternative that this case should be transferred to the

9

Southern District of Florida.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Newbanks concedes that action could have been brought in the Southern District of Florida.

In ruling on a motion to transfer under § 1404(a), a district court "should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).  Factors include: (1) the convenience of the parties and witnesses; (2) the accessibility of evidence; (3) the availability of process to make reluctant witnesses testify; (4) the costs of obtaining willing witnesses; (5) the practical problems of trying the case most expeditiously and inexpensively; and (6) the interests of justice.  *Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009).  Unless the balance of these factors "is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id.*

PortNexus argues that several current and former employees of PortNexus who live in Florida will likely be subpoenaed to testify.  PortNexus also explains that any third-party witnesses who will be called to testify live outside Ohio.  PortNexus also argues that this case would likely be adjudicated faster in the Southern District of Florida based on a comparison of the caseload of that court to this Court.  Finally, Port-Nexus argues that Florida has a significant interest in adjudicating a dispute involving a Florida-based company.

However, the Court notes that Newbanks is located in Ohio, along with evidence related to his employment with PortNexus.   PortNexus has only identified three witnesses who are located in Florida.   As to the third-party witnesses—who are located in British Columbia and New York—there is no indication that Ohio would be less convenient than Florida.   Moreover, as Newbanks explains, the evidence which is crucial to his claims is held by AT&T, which is headquartered in Texas.   Because the balance of these factors is not strongly in favor of PortNexus, PortNexus' Motion to Transfer Venue is DENIED.

D.    **Motion for Award of Costs for Service of Process and Attorney's Fees**

In his Motion for Award of Costs for Service of Process and Attorney's Fees, Newbanks seeks an award of $235 for expenses incurred for service of process on PortNexus due to PortNexus' failure to waive service; and attorney's fees for preparing his Motion.

Newbanks brings his Motion pursuant to Federal Rule of Civil Procedure 4(d)(2), which provides:

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court must impose on the defendant:
>
> (A) the expenses later incurred in making service; and
>
> (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4(d)(2).[1]

On April 3, 2015, counsel for Newbanks sent a letter to PortNexus explaining

---

[1]This provision was not a part of the recent changes made to the Federal Rules of Civil Procedure which were effective December 1, 2015.

Newbanks' dispute with PortNexus.   (Doc. 9-2, Cori Besse Decl. ¶ 4).   The parties were unable to reach a resolution.   On May 6, 2015, Newbanks filed his Complaint.   (Doc. 1). That same day, counsel for Newbanks sent PortNexus a letter containing a waiver of service form and other materials in compliance with Federal Rule of Civil Procedure 4(d)(2)(A-G).   (Besse Decl., ¶ 5).   Newbanks sent the waiver via first class mail to both PortNexus' principal place of business and to the address listed for the then registered agent for PortNexus: Monika Jones.   (Id.)   On May 12, 2015, Plaintiff's counsel sent Monika and Steven Jones a courtesy copy of the Complaint and the waiver via email. (Id., ¶ 6 & Doc. 9-3).   When PortNexus failed to return the waiver, counsel for Newbanks contacted Monika and Steven Jones via email and reminded them of the obligation to return the waiver, or otherwise bear the responsibility for the cost for service of the summons.   (Id., ¶7 & Doc. 9-4).

Because there was no response to the letter or the emails, on June 12, 2015, Newbanks filed his request for issuance of summons with the Court.   (Doc. 3).   The Complaint, Waiver and the Summons named "PortNexus, Inc." as the defendant. However, Defendant's registered name with the Florida Department of State Division of Corporations is "Port Nexus Corporation."

Newbanks retained L.R.I., a process server licensed in the State of Florida, to serve PortNexus.   (Id. at ¶ 8).   On June 22, 2015 at 12:07 p.m., the process server attempted to serve Monika Jones.   (Id.)   Monika Jones is an officer or director of PortNexus.   However, Monika Jones refused service, claiming that she was not affiliated with PortNexus.   (Id. & Doc. 9-5).   That same day, PortNexus designated a new registered agent for PortNexus.   On June 26, 2015, L.R.I. attempted to serve the new

12

registered agent, Corporation Services Company. (Doc. 5). On June 30, 2015, Corporation Service Company sent a "Rejection of Service of Process" to Newbanks, claiming that the company to which service of process is directed must be identical to the company name on file with the Secretary of State because "two or more companies can have very similar names." (Besse Decl., ¶9 & Doc. 9-6).

On July 7, 2015, Newbanks filed his First Amended Complaint, which is identical to the original Complaint, except its names "PortNexus Corporation" as Defendant. (Doc. 6). Newbanks again retained L.R.I. to serve the Amended Complaint and Summons which was served on PortNexus' registered agent on July 9, 2015. (Doc. 8).

As grounds for "good cause" for failing to sign and return the waiver, PortNexus explains that Monika Jones is a "non-lawyer." However, PortNexus does not dispute that at the time Monika Jones was received the request for waiver, she was authorized to receive service of process, or that the request was sent to the correct address.

Next, PortNexus explains that Newbanks named "PortNexus, Inc." instead of "Port Nexus Corporation." This slight misnomer does not establish good cause for failing to sign and return the waiver. PortNexus was aware of the dispute with Newbanks before the Complaint was filed. Moreover, PortNexus does not dispute that up until the time PortNexus received the request for waiver, PortNexus referred to itself as "PortNexus, Inc." on its website. Finally, a search for either "Port Nexus Corporation" or "PortNexus, Inc." on the Florida Department of State's website yields the same results, and there are no similarly-named entities. (Doc. 9-9). Because PortNexus has not established good cause for failing to sign and return the waiver requested by Newbanks, Newbanks is entitled to reimbursement of the expenses incurred with making service, and reasonable

13

attorney's fees in preparing his motion. *Accord Schaller v. Nat'l All. Ins. Co.*, 496 F. Supp. 2d 887, 889 (S.D. Ohio 2007).

PortNexus argues that Newbanks never sought a waiver of service for the Amended Complaint, and therefore he cannot recover costs and fees incurred in making service. However, Federal Rule of Civil Procedure 4(d)(2)(A) provides that this Court "must impose . . . the expenses later incurred in making service." The rule does not delineate between the first or second attempts at service. The only effective service was the service of the Amended Complaint, and the sole reason for the amendment to the original Complaint was that PortNexus refused to accept service of the Complaint naming "PortNexus, Inc." as Defendant. Therefore, Newbanks is entitled to his expenses of $235.00 in making service.

PortNexus argues that the hourly rate is not reasonable because "Newbanks is not himself paying the hourly rate requested by his lawyer." However, the Court finds that based on the Ohio State Bar Association's "The Economics of Law Practice in Ohio" for 2013, the hourly rate of $250 is a reasonable rate for an attorney with the same number of years and experience, and working in the practice area as counsel for Newbanks.

PortNexus argues that the 8.4 hours counsel spent preparing Newbanks' Motion is not reasonable. PortNexus cites *Wilson v. D & N Masonry, Inc.*, No. 1:12-CV-922, 2013 WL 3148410, at *2 (S.D. Ohio June 19, 2013), wherein the court found that the amount of time invested—one hour researching the case law on Rule 4(d)(2) and 2.2 hours preparing the motion was not reasonable. However, in this case, the refusal of service by Monika Jones and Corporation Services Company led to additional time in preparation in the Motion and supporting materials. Therefore, the Court finds that 8.4 hours is a

14

reasonable amount of time on drafting and filing the Motion.

Finally, PortNexus argues that if there is any award of costs and fees, it should be stayed until the final judgment and applied as a set-off against amounts owed by Newbanks to PortNexus. PortNexus explains that it intends to file a counterclaim against Newbanks and he should not recover any costs and fees unless he satisfies any judgment against him and in favor of PortNexus. PortNexus cites no rule or caselaw in support of this proposition, and the Court finds no reason to delay the award.

## III. <u>CONCLUSION</u>

Based on the foregoing, it is hereby **ORDERED** that:

1. Defendant PortNexus Corporation's Motion to Dismiss the Complaint (Doc. 16) is **DENIED**;

    a. To the extent PortNexus seeks in the alternative to transfer venue, that Motion is DENIED;

2. Plaintiff Kevin Newbanks' Motion for Award of Costs for Service of Process and Attorney's Fees (Doc. 9) is **GRANTED**; and

    a. Plaintiff Kevin Newbanks is entitled to recover $235.00 in costs and $2,100.00 in attorney's fees from Defendant PortNexus Corporation.

    **IT IS SO ORDERED.**

_____*/s/ Michael R. Barrett*_____
Michael R. Barrett, Judge
United States District Court